```
           IN THE UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF GEORGIA
                      NEWNAN DIVISION

DEMETRIUS WYNN,                *
                               *
     Plaintiff,                *
                               *
vs.                            *    CASE NO. _____
                               *
CITY OF NEWNAN, DETECTIVE      *
JOSEPH CASTRO, and             *
OFFICER HUNTER ROLLINGS,       *
both in their individual       *
capacities,                    *
                               *
                               *    JURY TRIAL DEMANDED
     Defendants.               *
```

**COMPLAINT**

NATURE OF THE CASE

1.

This is a civil rights case. The individual police officers performed an incompetent investigation which directly caused Demetrius Wynn's unlawful arrest and detention. The reckless and false statements made in the individual defendants' warrantless arrest affidavit lead to Wynn spending over a month in jail on a baseless charge. With this complaint, Wynn seeks a trial on damages.

PARTIES

2.

Plaintiff Demetrius Wynn is a resident of Carroll County, Georgia.

3.

Defendant City of Newnan ("the City") is a political subdivision of the State of Georgia, which has the capacity to sue and be sued.

4.

Defendant Joseph Castro is or was employed by the Newnan Police Department. Detective Castro is sued in his individual capacity. At all times relevant to this complaint, Castro acted under the color of law.

5.

Defendant Hunter Rollings is or was employed by the Newnan Police Department. Officer Rollings is sued in his individual capacity. At all times relevant to this complaint, Castro acted under the color of law.

VENUE

6.

All acts or omissions alleged in this complaint occurred in the Northern District of Georgia, where at least one of the defendants resides, and therefore venue is properly within this district under 28 U.S.C. § 1391(b)(2).

JURISDICTION

7.

Jurisdiction for this suit is conferred in part by 42 U.S.C. § 1983, which provides in part:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory, or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

8.

Under 28 U.S.C. §§ 1331 and 1343(a)(3)&(4), the Court can entertain an action to redress a deprivation of rights guaranteed by the United States Constitution, and the Court has jurisdiction under 28 U.S.C. § 1367 to hear an action to redress a deprivation of rights guaranteed by the laws and the Constitution of the State of Georgia.

9.

Wynn timely provided ante litem notice to the City.

FACTS

10.

On the afternoon of December 2, 2021, Officer H. Rollings and Detective J. Castro of the City of Newnan police department responded to an "armed robbery" call at Newnan Crossing Apartments located at 151 Parkway North in the City of Newnan.

11.

Upon arriving, Officer Rollings met the victim, Jose

Trejo Rios, in front of Building 2 of the apartment complex. Rios explained that he had responded to a posting on Facebook Marketplace to buy a PlayStation for $700, and that he had just driven from Athens to Newnan to purchase it. He described to Officer Rollings how he was robbed at gun point by three Black persons: Suspects 1, 2, and 3.

12.

After arriving at the scene, the officers learned the following from Rios:

(a) Rios initially met Suspect 1 (later identified as Cameron Yancey) at the complex, who he described as a Black male wearing a pink and blue hoodie, black pants, blue Nikes, and carrying a white Nike backpack;

(b) Suspect 1 led Rios to Apartment Unit # 420;

(c) At Unit # 420, Suspect 1 knocked on the apartment door, but, before anyone answered, Suspect 1 and Rios left and walked downstairs;

(d) As Suspect 1 and Rios walked to the ground floor, Suspect 2 (later identified as Quantavious Harris) exited Unit # 420 and proceeded to the second floor landing of the building;

(e) While on the ground floor, Suspect 1 opened his backpack and showed Rios the PlayStation 5.

    Suspect 2 saw Suspect 1 open the backpack and show Rios the PlayStation;

(f) Suddenly Suspect 3 (later identified as Alisha Hill) appeared.  She was described as a Black <u>male</u> with long dreads and wearing all black clothing and a ski mask;

(g) Suspect 3 brandished a silver pistol and demanded Rios's money.  Rios gave $700 to Suspect 3, who then went through Rios's pockets and took his cell phone.

13.

Based on Rios's description of Suspect 1, police officers spotted Yancey nearby and arrested him.  The police learned that there was an outstanding warrant for Yancey.  At the scene, Rios identified Yancy as the "seller" of the PlayStation, i.e., Suspect 1.

14.

At around the same time, police officers encountered Suspect 2 and identified him as Quintavious Harris.

15.

Harris told the police that Suspect 3 lived in Building 6 of the apartment complex and had long dreads.  Officers located a female in Building 6 who matched that description, Alisha Hill, and she was positively identified by Harris at

the scene.

16.

At the scene, Officer Rollings and other officers visited Unit # 102 and interviewed Wynn's girlfriend, Tiffiany Thomas.  They asked Thomas if her boyfriend (Wynn) lived with her and Thomas responded yes.

17.

Thomas told the officers that Suspect 3 (Hill), who she recognized from living in the apartment complex, had come by her apartment that afternoon.  Hill explained to the officers that Hill had asked Thomas if she could come in and 'chill because stuff was going on.'  After several minutes with Hill in her apartment, however, Thomas felt uncomfortable and asked Hill to leave.

18.

The officers left Thomas's apartment.  Soon after, though, the officers walked by Thomas's apartment with Hill in handcuffs.  Thomas confirmed to them that Hill was the person who had come to her apartment that afternoon.

19.

A search warrant was obtained for Hill's residence, Unit # 620.  During execution of that search warrant, the police found an iPad containing text messages on Facebook Marketplace between Hill and Rios about the purchase of the

Playstation. The name associated with the seller on the iPad was "A. Hill."

20.

At Det. Castro's direction, Thomas contacted Wynn via text message informing him (her boyfriend) that the police wanted to talk.

21.

When Wynn received the texts and from Thomas, he was a 15-minute walk away running errands (including picking up cigarettes). Wynn agreed to walk home immediately, and spoke with one of the officers on Thomas's phone to confirm that he was on the way.

22.

Wynn returned to Unit # 102 and was questioned by Det. Castro. Wynn was dressed in black jeans, a black hoodie, and orange Nike (Kyrie Irving) shoes.

23.

When Wynn showed up at the apartment, he told Det. Castro of his whereabouts that afternoon. Det. Castro did not take notes of his interview with Wynn. Det. Castro did not make any effort to corroborate Wynn's whereabouts at the time of the robbery. Wynn emptied his pockets and offered the officers his cellphone, unlocking it to show his texts with Thomas that afternoon.

24.

Neither Yancey, Harris, Hill, nor Rios identified Wynn as "Suspect" 1, 2 or 3.  Nor did Det. Castro or any other law enforcement officer show Yancey, Harris, Hill, or Rios a photo array in which Wynn was included.  In fact, Rios left the crime scene before Wynn arrived back home.

25.

The officers left Wynn and Thomas, only to return within a few hours to arrest Wynn and take him to the Coweta County Jail.

26.

During Det. Castro's investigation on the date of the robbery, no one identified Wynn as a suspect.  After Wynn's arrest, Det. Castro made no effort to check Wynn's alibi or to present a photo lineup to Rios or the Suspects.

27.

From the scene, all three suspects (Yancey, Harris, and Hill) were taken into custody and charged with armed robbery under O.C.G.A. § 16-8-41.  They were transported to the Coweta County Jail for booking.

28.

On the same day, Detective Castro prepared and submitted a Warrantless Arrest Probable Cause Affidavit in which he swore that "the male at apartment 102" was involved

in the armed robbery.

29.

In his warrant application Det. Castro failed to mention that Yancey (Suspect 1) had been identified and arrested on suspicion of conducting the robbery, although Det. Castro did swear that Harris and Hill (Suspects 2 and 3) had been identified and arrested.

30.

On the following day, a magistrate judge reviewed the Det. Castro's affidavit and issued an order for the "continued detention" of Wynn.  Given the serious nature of the charge, Wynn was not released from jail for over five weeks.

31.

The charges against Wynn were dismissed at a commitment hearing on January 7, 2022.

<u>Count 1</u>

<u>42 U.S.C. § 1983: False Arrest</u>

<u>in violation of the Fourth Amendment</u>

(Defendants Castro and Rollings)

32.

Wynn incorporates paragraphs 1 through 31 here by this reference.

33.

Based upon their experience, knowledge and training as law enforcement officers, these defendants knew or should have known that no arguable probable cause existed to believe that Wynn committed a crime on December 2, 2021.

34.

At all times relevant to this action, the law was established with obvious clarity that arresting a citizen without arguable probable cause and depriving a citizen of his liberty violates the Fourth Amendment to the United States Constitution.

35.

As a direct and proximate cause of these defendants' acts and omissions, Wynn was detained, arrested, and incarcerated against his will, entitling him to compensatory and punitive damages in an amount to be determined by the enlightened conscience of the jury.

### Count 2
### 42 U.S.C. § 1983: Malicious Prosecution
### in violation of the Fourth Amendment

(Defendants Castro and Rollings)

36.

Wynn incorporates paragraphs 1 through 31 here by this reference.

37.

The defendants initiated a criminal prosecution against Wynn for an alleged violation of O.C.G.A. § 16-8-41, Armed Robbery, and they knew or should have known that no arguable probable cause existed to believe that Wynn had committed any crime recognized by law.

38.

The defendants initiated the arrest and continued the prosecution of Wynn by making false and reckless statements and material omissions in his arrest warrant application, thus displaying malice and a reckless disregard for Wynn's civil rights.

39.

The arrest and prosecution forced Wynn to spend considerable time in jail.

40.

This criminal prosecution terminated favorably for Wynn.

41.

At all times relevant to this action, the law was established with obvious clarity that arresting a citizen without arguable probable cause and depriving a citizen of his liberty violates the Fourth Amendment to the United States Constitution.

42.

As a result of his arrest and prosecution, Wynn suffered emotional, mental, and financial injury, entitling him to recover nominal, compensatory, and punitive damages against the defendant in an amount to be determined by the enlightened conscience of the jury.

### Count 3

### Municipal Liability - Law Enforcement Activity

(The City)

43.

Wynn incorporates paragraphs 1 through 31 here by this reference.

44.

This Count is alleged against the City of Newnan.

45.

Wynn timely provided ante litem notice to the City.

46.

The City has purchased liability insurance from Georgia Interlocal Risk Management Agency ("GIRMA") that provides coverage and indemnification for liability arising from law enforcement operations, including errors and omissions. That policy was in effect at all times relevant to this complaint.

47.

The purchase of liability insurance constitutes a limited waiver of sovereign immunity by the City of Newnan.

48.

During the course of their employment and while fulfilling their official duties, the individual defendants were reckless or negligent in arresting Wynn and preparing an arrest warrant application accusing the wrong person of the crime.

49.

The City is liable for the tortious actions of the individual defendants under the doctrine of respondeat superior for violations of state and federal law.  Under that doctrine, the City is not entitled to present a defense of official immunity.

Count 5

O.C.G.A. § 13-6-11: Attorney's Fees

(The City)

50.

Wynn incorporates paragraphs 1 through 31 here by this reference.

51.

By the acts and omissions specified above, as well as other conduct, the City has acted in bad faith, been

stubbornly litigious and caused Wynn unnecessary trouble and expense.

52.

As a result of the defendant's actions, Wynn is entitled to recover his actual expenses of litigation, including attorney's fees, from the defendant.

**WHEREFORE**, Wynn prays:

(a) that as to Counts 1 through 4, the Court award Wynn compensatory and punitive damages against the defendants, in an amount to be determined by the enlightened conscience of an impartial jury;

(b) that as to Count 5, the Court award Wynn reasonable costs and attorney's fees in bringing this action in an amount to be determined at trial;

(c) that he be granted a trial by jury on all issues so triable; and

(d) that he be granted such other and further relief as this Court deems just and proper.

Respectfully submitted,

BY: /s/ Cary S. Wiggins
Cary S. Wiggins
Ga. Bar No. 757657

WIGGINS LAW GROUP, LLC
Suite 401
260 Peachtree Street, NW
Atlanta, GA 30303
Telephone: (404) 659-2880
cary@wigginslawgroup.com